## HESS v. ZAHN et al.

(Supreme Court, Special Term, New York County. January 6, 1908.)

1. WILLS—CONSTRUCTION—CONTINGENT INTEREST.

Testator declared that, on the death of his wife, all his estate then remaining should be divided into three equal parts, one to go to his son W., or to his heirs should he have died, another to his son H. or his heirs should he have died, and the remaining third in trust to apply the income to the use of testator's daughter for life, remainder to her children, etc. *Held*, that the interests of the sons contingent, depending on their surviving the widow, under the rule that where there is no gift, but a direction to executors or trustees to pay or divide, or to pay at a future time, the vesting of the interest will not take place until the arrival of such time.

2. SAME—"HEIRS"—WIDOW.

Where a will directed that, on the death of testator's widow, all his estate then remaining should be divided into three equal parts, one to go to his son W. or to his heirs should he have died, the word "heirs" should be construed to mean "next of kin," or those related by blood, entitled to take the personal estate of one dying intestate, and did not include W.'s widow.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 4, pp. 3241–3265; vol. 8, pp. 7677–7678.]

3. SAME—CONTINGENT INTEREST—MORTGAGE.

Where beneficiaries under a will took a contingent, and not a vested, interest, a mortgage executed by them on such interest did not create a valid lien on the proceeds of the estate in the hands of the executor.

4. SAME—ADVANCEMENT—PAYMENT—RECOVERY—INCOME.

Where testator charged his sons' interest in the estate with certain advancements, with interest, and provided that the principal thereof should not be payable until the sons received their share of the estate, a payment made by the sons on such indebtedness in her lifetime to their mother, who was entitled to receive the income of the estate as tenant for life, was voluntary and could not be regarded either as income or profit, so that the surviving executor and trustee of testator's estate was not entitled to recover any sum which the widow so received from the executor of her estate.

Action by Henry Hess, Jr., as sole surviving executor and trustee under the will of Casper Hirtler, deceased, against Rosa Zahn and others for the construction of the will.

Finck, Embree & Cobb (Duane P. Cobb, of counsel), for plaintiff.
Hitchings & Palliser, for defendant Rosa Zahn.
Rushmore, Bisbee, Rogers & Stern, for defendant Marie Hirtler.
Baldwin & Blackmar (Lucias R. Judson, of counsel), for defendants Brainard.
Henry Herrold, for defendant Hoch.

NEWBURGER, J. Casper Hirtler died on the 1st day of November, 1891, leaving him surviving Margaretha, his widow, and William Hirtler, Henry Hirtler, and Rosa Zahn, children. He left a last will and testament and a codicil. William Hirtler, a son, married the defendant Marie E. Hirtler on the 16th day of April, 1895, and died on the 15th day of March, 1904, no issue him surviving, but leaving a last will and testament, by which he bequeathed and devised all his property to said Marie E. Hirtler, his widow. Henry Hirtler, a son of the deceased, married the defendant Theresa W. on November 10, 1885, and died on the 2d day of April, 1900, intestate, leaving him surviving Theresa W., his widow, and Casper Hirtler, a son, who has just attained his majority, and Frank Hirtler, an infant, over the age of 14 years. Margaretha Hirtler, the widow of Casper Hirtler, died on February 3, 1906, leaving no issue, but leaving a last will and testament, which has been probated and not contested. Casper Hirtler by his will, after providing for the payment of his debts and making a number of bequests, provided in the fourth, fifth, and sixth clauses of said will the following:

"Fourth. All the rest, residue and remainder of my estate, real and personal, of whatever kind and wherever situated (excepting my dwelling house and premises, number one hundred and thirty-five East Ninety-Second street, in the city of New York, and the furniture and other articles therein contained, and my personal effects hereinbefore devised and bequeathed to my wife during her life), I give, devise and bequeath to my executors hereinafter named, or such of them as may qualify, and the survivors or survivor of them, in trust, to have and to hold the same and receive the rents, issues, profits and income thereof, and from time to time to pay and apply the net income arising therefrom to my beloved wife, Margaretha, for and during the term of her natural life so long as she remains my widow.

"Fifth. In case my said wife shall re-marry, then it is my will and I do hereby direct, that upon such re-marriage, my said executors and trustees, their survivors or survivor shall divide the said rest, residue and remainder of my said estate (excepting the house and premises number one hundred and thirty-five East Ninety-Second street, in the city of New York, and the furniture and other articles therein contained, and my personal effects), into three equal parts, and my said executors, their survivors or survivor shall continue to hold one of such parts in trust as aforesaid, to receive the rents, issues, profits and income thereof, and pay and apply the net income arising therefrom to my said wife for and during the rest of her natural life; and the other two parts of the rest, residue and remainder of my estate shall thereupon be further subdivided into three equal parts, one of which three equal parts I give to my son William, or to his heirs at law should he fail to survive me; another of said equal parts I give to my son Henry or to his heirs at law should he fail to survive me, and the third and remainder of said parts I give to my executors, or such of them as may qualify, or the survivors or survivor of them, in trust, nevertheless, to have and to hold the same, to invest and reinvest the same as hereinafter provided, to receive the rents, issues and profits thereof, and to pay and apply the income thereof to the use of my daughter, Rosa Zahn, for and during the term of her natural life, and upon her death I give said part so held in trust for her unto her children then living, and the issue of any of her children who may have died leaving issue; the issue of any deceased child of my said daughter to take the share or portion which his, her or their parent would have been entitled to, if living.

"The foregoing provisions for my said wife are made for her in lieu of dower.

"Sixth. It is my will and I do hereby direct that upon the death of my said wife, Margaretha, all my estate real and personal which may then remain undivided, shall be divided into three equal parts, one of which equal parts I give and bequeath to my son William or to his heirs at law should

he have died; another of said equal parts I give to my son Henry, or to his heirs at law should he have died, and the third and remainder of said equal parts I give to my executors, or such of them as may qualify, or the survivors or survivor of them, in trust, nevertheless, to have and to hold the same, to receive the rents, issues and profits arising therefrom, and to pay and apply the income thereof to the use of my said daughter, Rosa Zahn, for and during the term of her natural life, and upon her death, I give said part so held in trust for her unto her children then living and the issue of any of her children who may have died leaving issue; the issue of any deceased child to take the share or portion which his, her or their parent would have been entitled to, if living."

The executors ask the court to construe whether, under these provisions of the will, the interests of William and Henry were vested or contingent in view of the fact that both died before Margaretha, the widow, the life beneficiary. There can be no question that from a reading of the entire will and codicil, under the sixth clause of the will, the interests of the sons were contingent and dependent upon their surviving the life beneficiary. The rule has been laid down in the case of Warner v. Durant, 76 N. Y. 136, by Mr. Justice Folger in delivering the opinion of the court, as follows:

"This case presents the question whether a legacy became vested in the legatee in his lifetime, though he died before the time fixed for the payment. It is a general principle that where a gift is absolute, and the time of payment only, postponed, time, not being of the substance of the gift, but relating only to the payment, does not suspend the gift, but merely defers the payment. This principle will not act in this case to vest the legacies, for the gift was not, in the outset, to the legatee; and another rule is to be noticed. It is this: Where there is no gift, but by a direction to executors or trustees to pay or divide, and to pay at a future time, the vesting in the beneficiary will not take place until that time arrives. Here the gift was at first to the executors, to hold in trust for five years, and at the expiration of that period to pay over to the legatee. But this rule does not act in this case; for there has been a distinction grafted upon it. It is this: Where the gift is to be severed instanter from the general estate for the benefit of the legatee, and in the meantime, the interest thereof is to be paid to him, that is indicative of the intent of the testator that the legatee shall at all events have the principal, and is to wait only for the payment until the day fixed."

The rule thus laid down has been followed in a long line of decisions, and is now the settled rule of this state.

The second question submitted is: Who are the respective heirs at law to take under the sixth clause of said will? Having determined that the interests of the sons William and Henry were contingent and not vested, the only heirs at law under the sixth clause of the will are Rosa Zahn and the children of Henry Hirtler, namely, Casper and Frank C. The claim of Marie E. Hirtler, the widow of the son William, that under the will of her husband she is an heir at law, is untenable. It has been repeatedly held in this state that the word "heirs" means next of kin, and that the words "next of kin" do not include a widow or husband. In Tillman v. Davis, 95 N. Y. 17, 47 Am. Rep. 1, the court said:

"The primary meaning in the law of the word 'heirs' is the persons related to one by blood, who would take his real estate if he died intestate, and the word embraces no one not thus related. It is not strictly proper to so designate persons who succeed to the personal estate of an intestate. The proper primary signification of the words 'next of kin' is those related by blood to take personal estate of one who dies intestate; and they bear the same relation to

personal estate as the word 'heirs' does to real estate. The words 'heirs' and 'next of kin' would not ordinarily be used by any testator to designate persons who were not related to him by blood. In this case, if the testatrix had intended that the widow of Davis should take by substitution in his place the whole or any part of the legacy given to him, it is presumable that her name would have been mentioned. Or if it had been intended by the testatrix that those persons should succeed to the shares mentioned in the eighth, ninth, and tenth clauses of the will who were entitled to .take under statutes .of distribution, she would not have used the word 'heirs,' but would have designated them as the persons entitled by law to take the personal property in such cases. It is presumable that she was attached to the legatees named in those clauses by ties of affection or of blood; and hence that she desired that the persons of the same blood, who might also be relatives of her blood, should succeed to the property. In this state it has uniformly been held, when the question has arisen for consideration in the courts so far as we are able to discover, that the word 'heirs' applied to the succession of personal estate means next of kin, and that the words 'next of kin' do not include a widow or a husband of an intestate. In Drake v. Pell, 3 Edw. Ch. 251, the will directed a division of personal estate among nine children of the testator, and provided that in case any of them should die after him, and after having attained the age of 21 years, then the portion or interest of the child so dying should go to the 'heirs, devisees, or legal representatives' of the child so dying. One of the children, a daughter, died intestate, leaving a husband and children, and one of the sons died intestate, leaving a widow and children; and it was held that neither the term 'heirs' or 'legal representatives' included the husband or widow, that those terms meant 'next of kin,' and that a husband or widow did not answer to the description of 'next of kin.' In Wright v. Trustees of Meth. Epis. Church, Hoff. Ch. 202, a legacy was given by a testator to his second cousin, Euphemia Murray or to her heirs. She had died before the date of the will, leaving a husband and children; and it was held that the word 'heirs' meant next of kin, and did not include the husband, as he was not next of kin to the wife. The learned assistant vice chancellor writing the opinion cited various English authorities to sustain his decision. In Slosson v. Lynch, 43 Barb. 148, under a marriage settlement, the wife was to have the income for life of certain personal property with a certain power of appointment by will or otherwise and in the event of her death before her husband, and, in the absence of any appointment, then the property was to go to her issue then living and the children of such as might be deceased, and, in default of such issue, 'to the next of kin of the party of the first part'; and it was held that the words 'next of kin' meant those of the kindred or blood who took by the statute of distributions in case of intestacy, but excluding a widow as such; and the learned judge writing the opinion cited and commented upon many English decisions. In Murdock v. Ward, 67 N. Y. 387, the residue of personal property was directed to be 'equally divided among and paid to the persons entitled thereto as their, or either of their next of kin according to the laws of the state of New York, and as if the same were personal property, and they or either of them had died intestate.' And it was held that next of kin meant relatives in blood, and did not include a widow. In Luce v. Dunham, 69 N. Y. 36, a testator directed that all the rest, residue, and remainder of his estate should be divided among his 'heirs and next of kin in the same manner as it would be by the laws of the state of New York' had he died intestate; and it was held that the words 'next of kin' did not include a widow, and that the addition of the words referring to the laws in case of intestacy did not enlarge the class of legatees so as to include her."

See, also, Snider v. Snider, 11 App. Div. 171, 42 N. Y. Supp. 613; Matter of Devoe, 171 N. Y. 281, 63 N. E. 1102; Platt v. Mickle, 137 N. Y. 106, 32 N. E. 1070.

Having determined that the interests of William and Henry were contingent, and not vested, it is unnecessary for me to further discuss the claim of the defendants Brainard, for, unless they had a vested interest in the estate, the mortgage executed by them to the Brainards

is not a valid lien upon the proceeds of the estate in the executor's hands.

The next question as to whether the sum of $5,087.50 now in the hands of the executor of Margaretha Hirtler was received by Margaretha Hirtler, as executrix, makes it necessary to examine the second and third clauses of the codicil, which provide:

"Second. I do hereby charge against the share or portion of my estate to be received by my son William or to which he may be entitled under the provisions of my said will, the sum of eight thousand and two hundred and fifty dollars together with interest thereon from the date of my decease; being one half of the sum of sixteen thousand five hundred dollars which I have loaned and advanced to him and my son Henry. And I direct that the said sum shall be deducted from the share or portion of my estate to which my said son William may be entitled to under the provisions of my said will:

"Third. I do hereby charge against the share or portion of my estate to be received by my son Henry or to which he may be entitled under the provisions of my said will the sum of eight thousand two hundred and fifty dollars together with interest thereon from the date of my decease; being one half of the sum of sixteen thousand five hundred dollars which I have loaned and advanced to him and my son William. And I direct that the said sum shall be deducted from the share or portion of my estate to which my said son Henry may be entitled to under the provisions of my said will."

It will be noticed in these clauses that the decedent charged against his sons' interests in the estate, or against any sums of money to which they might be entitled under the provisions of the will, the amount of their indebtedness to him, together with interest, and it is clear from a reading of these clauses that the principal with interest should not be payable until the sons received their share of the estate, and, if during the lifetime of their mother any payments were made by them, it was voluntary and could not be held to be either income or profit; and therefore the plaintiff herein is not entitled to recover from the executor of Margaretha Hirtler's estate any sum of money she may have received from the sons of the decedent, Casper Hirtler.

Submit findings and decree in accordance with the views herein expressed.