[Civ. No. 241.   Fifth Dist.   Aug. 21, 1963.]

W. M. LYLES, as Executor, etc., Plaintiff and Appellant, v. TEACHERS RETIREMENT BOARD, Defendant and Respondent; WILLIAM HENRY DIXON CAREY et al., Real Parties in Interest and Respondents.

524

Brown & Tibbs and Stanley H. Tibbs for Plaintiff and Appellant.

Stanley Mosk, Attorney General, and William J. Power, Deputy Attorney General, for Defendant and Respondent.

Conron, Heard, James & Hamilton and Wayne M. Hamilton for Real Parties in Interest and Respondents.

BROWN (R.M.), J.—This is an appeal from a judgment denying the issuance of a peremptory writ of mandate.

Appellant filed a petition for a writ of mandate alleging that the decedent left a will, that petitioner is executor and that the will purported to dispose of the proceeds of the decedent's account with the State Teachers Retirement Fund. The petition was denied, and the appellant appeals from the judgment denying the issuance of peremptory writ of mandate.

In 1952 the decedent, Olive Elizabeth Meacham, who was a teacher in the State of California prior to her death, filled out a form supplied by the State Teachers Retirement System designating William H. D. Carey and Mary Jean Carey as beneficiaries of such funds. The decedent died on August 29, 1962, leaving a holographic will dated November 7, 1961, which stated, in part:

"I, Olive Meacham, being of sound mind, and aware that

the disposition of my affairs and effects could cause unhappiness to many, do will and bequeath as follows—

"First—regarding money. My estate should consist of a sum in California Teachers Retirement, about $6000.00. And a smaller sum in Credit Union.

"I 1. I wish first that all outstanding bills be paid.

    2. Then that the sum of $1000.00 be given . . .

    3. Then the sum of $250.00 . . .

"The following personal bequests—

    1. To my niece . . . Mrs. Everett Sexton—$1000.00.

    2. To Mrs. Jean Carey $250.00; to Dixon Carey $250.00 to Mary Jean Carey $250.00.

    3. The balance of cash money to be divided equally into 6 parts: . . . ."

There was no other mention made of the retirement system. The fund consisted of approximately $13,000 at her death, which included certain extra statutory benefits and contributions which accrued by reason of her death before her retirement.

Other than the will, there was no effort made prior to the death of the decedent to revoke or withdraw the designation of the Careys as beneficiaries with the retirement system. A certified copy of the will was filed with the system promptly after her death.

*Did the Will Revoke the Previous Designation of Beneficiaries and Was It Effective Even Though Filed after Death?*

Education Code section 14251, with exceptions of no importance here, provides that funds from designated sources in the hands of the system at the time of the death of a member, upon receipt of proof of death, shall be paid "to such beneficiary as he has nominated by written designation duly filed with the Retirement Board."

Education Code section 14401, insofar as it is material here, reads as follows: "Whenever nomination of a beneficiary is authorized by this chapter . . . , and no beneficiary has been nominated, the estate of the person authorized to make the nomination shall be the beneficiary. The nomination of a beneficiary under the Retirement System, . . . may be revoked at the pleasure of the person making the nomination, and a different beneficiary nominated by a written instrument duly executed and filed in the office of the system in Sacramento."

Education Code section 13864 provides for the administration of the retirement system, and provides that, "Any rules

and regulations adopted by the board for the purpose of the administration, and not inconsistent with the provisions of this chapter . . . , shall have the force and effect of law.''

In title 5 of the California Administrative Code, section 20529, the following rule was adopted, effective October 18, 1957: ''A nomination of beneficiary, or a revocation of a previous nomination of beneficiary, received in the office of the system in Sacramento after the date of a member's death shall be of no effect, and payments shall be made in accordance with the designation of beneficiary in effect on the date of death.''

Retirement benefits for school teachers are completely statutory in origin. Membership in the retirement system is compulsory. A member may dispose of his retirement system allowances upon his death by the nomination and designation of beneficiaries, or to his estate, but upon withdrawal from the system during his life, such moneys as he may have standing to his credit as particularly outlined in Education Code section 14151, may be withdrawn by him.

California has several retirement systems, such as the State Employees' Retirement System and the Legislative Retirement System. In the various systems there are provisions for the designation and revocation of beneficiaries. See Government Code sections 20037, 21204, 21205, 9359.4, 9359.5.

Before discussing the administrative regulations, our first problem is to ascertain whether or not the deceased's will constitutes a revocation of her nomination of beneficiaries under the retirement system. It will be noted that while Education Code section 14401 provides that nomination of a beneficiary ''may be revoked at the pleasure of the person making the nomination,'' nothing is required for such revocation to be in writing or filed at any time with the system, though the nomination of a different beneficiary must be by a written instrument duly executed and filed in the office of the system. Except for the requirement that the contributions of the teacher are compulsory until she quits or retires, she has all the other benefits of what is commonly known as a tentative trust or a Totten trust, in that she may (1) withdraw such contributions on her resignation as a teacher, (2) designate a beneficiary and may change that beneficiary at any time, or without a beneficiary, the funds would be payable to her estate. Thus, in effect, she is required by law to participate in a trust comparable to a tentative or a Totten trust.

The right to revoke a beneficiary under such type of trust

is discussed in 1 Scott on Trusts (2d ed.) section 58.4, page 493, where the text states: "A revocable trust of a savings deposit can be revoked by the depositor by his will. The trust is revoked not only where the depositor expressly disposes of the deposit in his will in favor of a person other than the beneficiary, but also where the dispositions made in his will would be ineffective if the trust were not revoked. On the other hand, the trust is not revoked by a bequest of the residue of the depositor's estate."

The Restatement Second of Trusts, section 330, subdivisions i and j, pages 138-140, also presents a full discussion on the subject.

Tentative trusts are also discussed in *Brucks* v. *Home Federal Savings & Loan Assn.*, 36 Cal.2d 845, 851, 852 [228 P.2d 545], where the court said: "However, 'a tentative trust of a savings deposit in a bank can be revoked by the depositor at any time during his lifetime, by a manifestation of his intention to revoke the trust. No particular formalities are necessary to manifest such an intention.' (Restatement of the Law of Trusts, § 58, comment b, p. 183.) Consistent with this principle, decedent, by her subsequent letter, simply exercised her reserved right of revocation with respect to any original trust in plaintiff's favor, and no further act would be required to effectuate the purport of the letter as a disaffirmance of such trust. (Cf. *In re Bearinger's Estate,* 336 Pa. 253 [9 A.2d 342, 343].)

". . . . . . . . . . . .

". . . It is true that decedent made no express mention of her bank account in the later will, and that it has been held that a mere residuary bequest, as distinguished from a specific bequest of the fund (*In re Ryan's Will,* 52 N.Y. S.2d 502, 508), will not effect a revocation of a tentative trust."

To the same effect is *In re Markowitz's Will,* 205 Misc. 267 [128 N.Y.S.2d 7, at pp. 8-9], in which it is stated that where a testator mentioned the exact amount of money on deposit in the trust account as set forth in his will, this constituted a revocation in that the bequests could not be paid without invading the savings account in the light of the language used by the testator, and "it is clear that he intended to revoke said Totten Trusts."

Thus, while it is argued by the real parties in interest that the decedent's will nowhere mentioned that she was, in express terms, making a revocation of the nomination of beneficiaries of the retirement fund, nevertheless, in view of the

above authorities, it is our opinion that she did intend to revoke and effectively did revoke her previous designation of beneficiaries.

Both appellant and real parties in interest refer to *Watenpaugh* v. *State Teachers' Retirement System,* 51 Cal.2d 675 [336 P.2d 165], which undoubtedly was the cause of the adoption of section 20529 of the Administrative Code. In this case, Watenpaugh, upon his second marriage, executed a change in beneficiary in favor of his wife and delivered the same to her, but it was not filed until after his death. The court held that the form need not be filed prior to his death, that the money was to be paid to his second wife, and stated at pages 681-682:

"The purpose of the provisions requiring the filing of a change of beneficiary is largely to protect the retirement system against the possibility of being called upon to pay twice. A second purpose, no doubt, is to provide a method of ascertaining the desire and intent of the member with reference to the payment of death benefits. The statute should be construed to give effect to an executed designation when there is a clear manifestation of intent by the member to make the change and the designation is filed promptly after death so as to prevent any prejudice to the retirement system.

"  .   .   .   .   .   .   .   .   .   .   .   .

"It is true that in ordinary life insurance contracts the general rule is that there must be strict compliance with the method prescribed by the policy for change of beneficiary [Citations.] However, the provisions for death benefits under retirement systems differ in important respects from ordinary life insurance policies. For example, the retirement benefits are completely statutory in origin, membership in the retirement system is compulsory, and the requirements for change of beneficiary are not subject to negotiation. The cases dealing with ordinary life insurance contracts are therefore not controlling. Language in *Wicktor* v. *County of Los Angeles,* 141 Cal.App.2d 592, 596 et seq. [297 P.2d 115], *Nichols* v. *Board of Retirement,* 121 Cal.App.2d 176, 180 [262 P.2d 862], and *Shaw* v. *Board of Administration,* 109 Cal.App.2d 770, 774 [241 P.2d 635], indicating that the interpretation of the provisions of retirement acts for public employees is to be governed by the same principles as those applicable to ordinary life insurance is disapproved insofar as it conflicts with the views expressed herein."

Thus, we have come to the conclusion that the will suffi-

ciently indicates an intention on the part of the decedent to revoke her previous nomination and to set up her estate as the beneficiary from which it, in turn, would pay out to the testamentary beneficiaries under the will, and that this will is not in fact a nomination of a new beneficiary but retains her right to so designate her estate as the recipient for her testamentary bequests.

The amount of money involved is not material in that the average school teacher is not expected to maintain a running balance of the amount that she has in the system, plus the variable amounts contributed directly by the state during her lifetime, as well as certain death benefits. Her intent is clear that she wanted all in her account to go to the estate.

We now come to the new rule as adopted in the Administrative Code. There is apparently no other type of reference to such a problem except as set forth in the Retirement System of the State Employees. Section 582 of title 2, California Administrative Code, provides that payments by the system of a benefit ''on the basis of a determination in good faith of the existence and identity of the members of a class so designated shall constitute a complete discharge and release of the system . . . , notwithstanding that it may not have discovered a beneficiary otherwise entitled.''

Government Code section 11374 governs the validity of regulations, and states: ''Whenever by the express or implied terms of any statute a state agency has authority to adopt regulations to implement, interpret, make specific or otherwise carry out the provisions of the statute, no regulation adopted is valid or effective unless consistent and not in conflict with the statute and reasonably necessary to effectuate the purpose of the statute.

''Any existing rules or regulations conflicting with this section are hereby repealed.''

The court, in *Pitts* v. *Perluss,* 58 Cal.2d 824, 832 [27 Cal. Rptr. 19, 377 P.2d 83], stated that the court should not ''superimpose its own policy judgment upon the agency in the absence of an arbitrary and capricious decision.'' *People* v. *Mangiagli,* 97 Cal.App.2d Supp. 935, 943 [218 P.2d 1025], states that where a statute has a doubtful meaning or is ambiguous, a regulation is appropriate, but '' 'An administrative officer may not make a rule or regulation that alters or enlarges the terms of a legislative enactment.' ''

Section 13864 of the Education Code, as quoted above, states that such rules and regulations are for the purpose of

the administration not inconsistent with the other laws, and Government Code section 11374 provides that such regulations are not to be inconsistent or in conflict.

Thus, we have come to the conclusion that the regulation requiring that all revocations or designations of any beneficiary to be valid must be received at the system's office prior to the member's death goes beyond the law contained in Education Code section 14401, and is arbitrary and capricious. It affects the rights of teachers to their own property and has usurped the power of the Legislature and conflicts with its intent.

It is needless to say that the prime purpose of the retirement system is to enable a teacher satisfactorily to protect herself for her years of retirement and to nominate anyone she so desires or her estate as beneficiaries upon her death. The State of California has no interest in whom such teacher may so designate, in spite of its own contributions. Its prime interest is to be sure that it does not pay any retirement benefits to the wrong person or to pay the benefit twice, and to operate the system in an efficient and economical manner. Her estate includes all in the fund under her control.

The system may pay any of the funds involved into court where it is doubtful as to the proper beneficiary.

The judgment is reversed, with directions to the trial court to let a peremptory writ of mandate issue.

Conley, P. J., and Stone, J., concurred.

The petition of defendant and respondent for a hearing by the Supreme Court was denied October 16, 1963.